**Sealed**

Public and unofficial staff access
to this instrument are
prohibited by court order.

**SEALED**
## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

DEC 1 7 2014

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | **CRIMINAL NO. 13-691** |
| | § | |
| | § | |
| CARLOS WYDLER | § | |
| (1-23), | § | |
| LEYLA WYDLER | § | |
| (a/k/a LEILA M. WYDLER) | § | |
| (1-17), | § | |
| RITA JESSICA MARTINEZ | § | |
| (a/k/a JESSICA MARTINEZ) | § | |
| (1-14), | § | |
| GILBERT MARTINEZ | § | |
| (1, 3-6, 8-14), and | § | |
| FELIX MARTINEZ | § | |
| (1-2, 5-7, 10-11) | § | |

## SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

At all times material to this Superseding Indictment:

## COUNT ONE
### (Conspiracy, 18 U.S.C. §1349)

**A.** **INTRODUCTION**

1. The Federal Deposit Insurance Corporation (FDIC) was an agency of the

United States established to protect depositors by insuring the deposits of member

banks against loss up to $100,000 with the purpose of preventing their collapse and

instilling public confidence in the nation's banking institutions. The FDIC insurance fund was backed by the United States government.

2.     Farmers and Merchants Bank of Long Beach (FMB) was a federally-insured financial institution located in Long Beach, California, whose deposits were insured by the FDIC. FMB was a California-based bank, and all of its branches were within the state of California.

3.     In or about April 2007, **CARLOS WYDLER** was hired to be the manager of the credit card department at FMB, and held the title of Vice President.   As credit card manager, **CARLOS WYDLER** was an officer, agent, and employee of FMB. **CARLOS WYDLER's** maximum lending limit was $75,000.

4.     **LEYLA WYDLER** was married to **CARLOS WYDLER's** father and, thus, **CARLOS WYDLER's** stepmother. **LEYLA WYDLER** was also a licensed real estate agent in Texas.

5.     **LEYLA WYDLER** and her husband, **CARLOS WYDLER's** father, owned, operated, and were corporate officers for at least a dozen similarly-named businesses in the Houston, Texas area including Globan Mortgage Company (Globan Mortgage), Casa Milagro, First Milagro LP, Plaza Milagro, Milagro in the Heights, and Milagro Credit Company (the Wydler family business).

6.     In mid-2007, **LEYLA WYDLER** and her husband were seeking funding and investors for real estate investment projects.

7.     In the summer of 2007, **CARLOS WYDLER** assisted borrowers in bypassing bank lending limits by telling borrowers to submit multiple applications in different names to him for approval.   Around the same time, **CARLOS WYDLER**, while still employed at FMB, began promoting Wydler family real estate projects to potential investors.

8.     By early fall of 2007, **CARLOS WYDLER** was approving FMB credit card applications that were being processed at the Wydler family business office in Houston, Texas.  Credit cards were rarely, if ever, issued.  Instead, **CARLOS WYDLER** set high credit limits, and issued cash advances for virtually the full amount of a borrower's "credit card" limit.   After the cash advance was funded, borrowers paid a portion of the cash advance to the Wydler family business.

9.     Many of the credit card applications processed at the Wydler family business office in Houston, Texas contained fraudulent information about income.

10.   **CARLOS WYDLER** coached co-conspirators how to fill out the fraudulent income number on FMB credit card applications in order to ensure that applications were approved for maximum credit lines.

11.   **LEYLA WYDLER** falsified income information, or caused falsified income information to be made, on FMB credit card applications.

12.   In addition to providing unsecured loans for Wydler family real estate projects, over the period of the conspiracy fraudulently obtained FMB funds were

used to provide more than $1 million in unsecured loans for car and home purchases.

13.     **JESSICA MARTINEZ** worked as a loan processor for the Wydler family business.

14.     **JESSICA MARTINEZ** was married to **GILBERT MARTINEZ**. **GILBERT MARTINEZ** was employed at a car dealership called Fusion Autoplex in Houston, Texas.

15.     **FELIX MARTINEZ** is **JESSICA MARTINEZ'** brother.  In 2006 and 2007, **FELIX MARTINEZ** worked as an independent contractor for a company that he did not own in Houston, Texas.

**B.      THE CONSPIRACY**

From in or about April, 2007, through in or about July, 2008, in the Houston Division of the Southern District of Texas and elsewhere,

**CARLOS WYDLER**
**LEYLA WYDLER**
**JESSICA MARTINEZ**
**GILBERT MARTINEZ**
**and**
**FELIX MARTINEZ**

defendants herein, did knowingly combine, conspire, confederate, and agree with others known and unknown to commit the following offense against the United States, that is: to knowingly execute and attempt to execute a scheme and artifice to defraud FMB, and to obtain moneys, funds, and credits owned by and under the

4

custody and control of FMB, by means of material false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

## C.    MANNER AND MEANS OF THE CONSPIRACY

16.    The defendants and their co-conspirators sought to accomplish the purpose of the conspiracy by the following manner and means, among other things:

a.    bypassing lending limits by applying for credit, or having other applicants apply for credit, at different times and/or in different names, including in the names of non-existent businesses;

b.    preparing or causing to be prepared loan applications that contained false and fraudulent information about income to obtain loans from FMB;

c.    preparing or causing to be prepared false and fraudulent documents such as W2s, pay stubs, and income tax returns to obtain loans from FMB;

d.    faxing and emailing fraudulent loan applications to obtain loans from FMB;

e.    emailing false and fraudulent documents such as W2s, pay stubs, and income tax returns to obtain loans from FMB;

f.    depositing fraudulently obtained loan funds into designated bank accounts via wire transfer and cashier's check;

g.    collecting money from fraudulently obtained loan funds for their own benefit and the benefit of others.

## D.    ACTS IN FURTHERANCE OF THE CONSPIRACY

To achieve the purpose of the conspiracy, the defendants and their co-conspirators, in the Southern District of Texas and elsewhere, committed and caused to be committed the following acts in furtherance of the conspiracy:

| | | |
|---|---|---|
| 1. | April 27, 2007 | **CARLOS WYDLER** emailed **LEYLA WYDLER** that he could "give you a line of credit as high as you want…" |
| 2. | May 1, 2007 | **LEYLA WYDLER** emailed **CARLOS WYDLER** that "we are working on a project in El Salvador to develop my father's land and Casa Milagro will be obtaining financing and promoting the project." |
| 3. | May 1, 2007 | **CARLOS WYDLER** emailed **LEYLA WYDLER:** "I know you are rich, but simply make sure to write for me an income higher than $100k a year so you may be given the maximum line [of credit]." |
| 4. | May 30, 2007 | **CARLOS WYDLER's** father emailed **CARLOS WYDLER** a brochure "attaching the information for the sale of the lots.  For the sale of each one we can pay a commission of 4%, that is, 2,400." |
| 5. | May 31, 2007 | **CARLOS WYDLER** emailed the brochure to a potential investor: "As an investor, this is something that may interest you.  You may purchase the land with a loan and eventually keep one of the homes.  I am planning to buy one; will see how it goes for me." |
| 6. | May 31, 2007 | **CARLOS WYDLER** emailed the brochure to another potential investor "…in case you are interested.  I am considering buying one, but it would be good if one day a |

few of us would get together and build a large development.  Hopefully this will make us rich."

| 7. | May 31, 2007 | **CARLOS WYDLER** emailed an Executive Vice-President of FMB asking if FMB could offer his father a business loan and some business credit cards to help his father with "some new projects," and that extending a $500K credit line would make a "very profitable customer." |
|----|----|----|

| 8. | June 3, 2007 | When the FMB Executive Vice-President declined to extend loans to **CARLOS WYDLER's** father, **CARLOS WYDLER** emailed his father that he had credit authority of 75K for businesses and 25K for consumers, and that: "It had occurred to me to give you three lines of 75K…You can refinance it in three credit cards in the name of the business and even then the interest was [sic] tax deductible." |
|----|----|----|

| 9. | June 6, 2007 | **CARLOS WYDLER** emailed credit applications to his father: "For every application I can give you a line of credit of $50K.  If you have two legal entities it would be a good idea for you to apply with two different ones, in which you sign as president of one and Leyla signs the other one.  That way I could give you up to $100K."  He also told his father that if he sent the company's bank statements and tax return that "we will not verify that the income stated matches 100%." |
|----|----|----|

| 10. | Aug. 27, 2007 | **CARLOS WYDLER** received an email from his father regarding "…what was discussed yesterday, could you send me by e-mail the credit application for the FMB card?  It appears there is quite a lot of interest." |
|----|----|----|

| 11. | Aug. 27, 2007 | **CARLOS WYDLER** emailed a blank VISA credit card application to his father. |
|----|----|----|

| 12. | Sept. 4, 2007 | **CARLOS WYDLER** emailed Wydler family business |
|----|----|----|

associate C.A. telling him "I already have you [sic] application approved. There are going to be two accounts, one with 25,000 and the other with 20,000."

13.  Sept. 6, 2007    **CARLOS WYDLER** responded to C.A.'s email request For a "general outline in order to see how we offer it to our clients" by saying: "...the way we sell it is like a revolving line of credit for Balance Transfers or personal loan...
I'll give you a tip, it can help you for clients that want a 100% financing loan for a house.
An example:
You have a house worth $100,000 dollars. The client has good credit, and doesn't have the down payment. You could go with an 80% loan so you can give him/her the best rate possible, and the other 20% (20,000) you get with me at an even lower rate than the loans that are 80/20.
Note that in order to get high lines of credit, it's important that the income on the application be higher than 100,000 per year."

14.  Sept. 26, 2007   **CARLOS WYDLER** emailed C.A. "...following up on those references because I have not received an application yet...just so I may be on the lookout in case they get here I know who they are."

15.  Oct. 9, 2007    **CARLOS WYDLER's** father emailed him an attachment about "First Milagro LP" and **CARLOS WYDLER** responded: "From what I understand, you need to get $200k in order to start a partnership and get the project underway. How much do you need to finalize the first partnership?"

16.  Oct. 9, 2007    **CARLOS WYDLER's** father emailed him that "I still need between 50,000 and 100,000."

17.  Oct. 12, 2007   **CARLOS WYDLER** emailed his father that he had sent the wire for "your personal loan and the funds

should be in your account today."

| 18. | Oct. 24, 2007 | **FELIX MARTINEZ** signed or caused to be signed an FMB loan application that was submitted with false and fraudulent income information. |
|---|---|---|
| 19. | Nov. 13, 2007 | **LEYLA WYDLER** emailed **CARLOS WYDLER** that she was attaching another application that "you had already approved" so it could be processed. |
| 20. | Nov. 19, 2007 | Wydler business associate C.A. emailed **CARLOS WYDLER:** "We just emailed you two special applications.  The first and most important, "R.R." and wife (Joint Account) who are looking for $47,000 to $48,000, since they are looking to complete their partnership investment with us. |
| 21. | Nov. 19, 2007 | **CARLOS WYDLER** responded to C.A.'s email telling him: "By the way, one important note is not to mention about the partnership by E-mail or with EXXXXX, since she doesn't know what it is about.  It's not that it's bad nor anything, but in time she could have doubt and they could ask for more requirements."<br>*(EXXXXX was an FMB employee who worked in the credit card department.) |
| 22. | Nov. 19, 2007 | C.A. emailed **CARLOS WYDLER:** "I've only commented it with you, but I'm going to be more vigilant about this." |
| 23. | Dec. 28, 2007 | **CARLOS WYDLER** emailed his father re: "Milagro in the Heights: Do you want the line of credit at 5.99%?  How much do you want to send to your Chase account? |
| 24. | Jan. 4, 2008 | A borrower who obtained an FMB loan through the Wydler family business wired $1,500 of FMB loan proceeds to Globan Corp.'s Chase Bank account. |
| 25. | Jan. 4, 2008 | **JESSICA MARTINEZ** emailed **CARLOS WYDLER** |

that her husband worked in the car business and had asked about getting car loans "approved with you."

| 26. | Jan. 4, 2008 | **CARLOS WYDLER** emailed **JESSICA MARTINEZ**: "We do it differently because all of our customers prefer to take the unsecured line of credit for a high amount and they use the funds to buy a car. They like it better this way because you get the car title (you have your asset with you)…" |
| --- | --- | --- |
| 27. | Jan. 4, 2008 | **CARLOS WYDLER** emailed **JESSICA MARTINEZ:** "We could do it the same way we are doing it with Globan or work something special that we could actually send the funds to the dealer." |
| 28. | Jan. 15, 2008 | **JESSICA MARTINEZ** emailed a proposed Fusion Autoplex borrower's pay check stub, driver's license and letter giving wire transfer instructions to **CARLOS WYDLER** and **LEYLA WYDLER.** |
| 29. | Jan. 25, 2008 | **CARLOS WYDLER** emailed two FMB credit card employees about a borrower's application stating: "It's a prequal from Leyla and it was approved." |
| 30. | Jan. 25, 2008 | **CARLOS WYDLER** responded "Ok." to the following email from an FMB credit card employee after FMB instituted a rule requiring 72 hours between loan approval and disbursement of loan funds:<br><br>"By reading this, it looks like we are bound to the 72 business hours (3 days). We can wait to charge the client however long you want, but if we are asked for documentation that shows when we deposited the \$\$, it will show that we did it on the same day. How are we going to cover up this detail? We have to be cautious, my recommendation is to wait the 3 days for the new clients of F&M that can be tracked and we'll continue as we have been doing until now with the ones from Tx." |
| 31. | Feb. 28, 2008 | **CARLOS WYDLER** forwarded his father an email |

originally from FMB's compliance manager that the balance transfer program could move forward again.

| | | |
|---|---|---|
| 32. | Mar. 4, 2008 | **FELIX MARTINEZ** applied for a $75,000 loan in the name of "FM Fleet Service," causing FMB to send a wire of $75,000 to the joint bank account of **FELIX MARTINEZ** and his wife in Texas. |
| 33. | Mar. 6, 2008 | **GILBERT MARTINEZ** applied for a loan in the name of "G&M Wholesale Services", causing FMB to wire $51,000 to the joint bank account of **GILBERT MARTINEZ** and **JESSICA MARTINEZ** in Texas. |
| 34. | Mar. 10, 2008 | **FELIX MARTINEZ'** wife used FMB loan proceeds to write a check for $7500 payable to Globan Corporation. |
| 35. | Mar. 12, 2008 | $51,000 of FMB loan proceeds in **JESSICA and GILBERT MARTINEZ'** joint bank account was converted into a cashier's check payable to **FELIX MARTINEZ** and deposited into the joint bank account of **FELIX MARTINEZ** and his wife. |
| 36. | Mar. 14, 2008 | **FELIX MARTINEZ** used the combined loan proceeds from the $75,000 FM Fleet Service loan referenced in act 32, and the $51,000 G&M loan referenced in acts 33 and 34 to buy a cashier's check for $121,461.95. |
| 37. | Mar. 14, 2008 | **FELIX MARTINEZ** used the $121,461.95 cashier's check to purchase, mortgage-free, a residential property located at 26778 Burning Tree in New Caney, Texas. |
| 38. | Mar. 14, 2008 | **LEYLA WYDLER** was **FELIX MARTINEZ'** realtor for the purchase of 26778 Burning Tree, and received a realtor's commission from the transaction. |

In violation of Title 18, United States Code, Section 1349.

## COUNTS TWO - SIX
### (Bank Fraud, 18 U.S.C. §1344 and 2)

## A.   INTRODUCTION

1.      Paragraphs 1 through 15 of Count One of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

## B.   THE SCHEME TO DEFRAUD

2.   From in or about April, 2007, and continuing through in or about July, 2008, in the Houston Division of the Southern District of Texas and elsewhere,

### CARLOS WYDLER
### LEYLA WYDLER
### JESSICA MARTINEZ
### GILBERT MARTINEZ
### and
### FELIX MARTINEZ

the defendants, aided and abetted by others known and unknown to the grand jury, did knowingly execute and attempt to execute a scheme and artifice to defraud FMB, and to obtain moneys, funds, and credits owned by and under the custody and control of FMB, by means of material false and fraudulent pretenses, representations, and promises.

## C.   THE MANNER AND MEANS OF THE SCHEME

3.      Paragraph 16 of Count One of this Superseding Indictment is re-alleged and incorporated by reference herein as a description of the manner and means of the

scheme and artifice.

## D.   **EXECUTION OF THE SCHEME**

4.      On or about the dates specified below, within the Houston Division of

the Southern District of Texas and elsewhere, the defendants, for the purpose of

executing the aforesaid scheme and artifice to defraud, and attempting to do so, did

knowingly execute and attempt to execute the aforesaid scheme and artifice to

defraud FMB and to obtain money, funds, and credits owned by and under the

control of FMB, by means of material false and fraudulent pretenses,

representations, and promises, as more particularly described below:

| Count | Defendant | Date | Description/ Loan Amount |
|-------|-----------|------|--------------------------|
| 2 | C. Wydler, L. Wydler, J. Martinez, and F. Martinez | 10/24/2007 | Loan application for Felix Martinez containing false and fraudulent income information/ $25,000 |
| 3 | C. Wydler, L. Wydler, J. Martinez, and G. Martinez | 10/24/2007 | Loan application for Gilbert Martinez containing false and fraudulent income information/ $25,000 |
| 4 | C. Wydler, L. Wydler, J. Martinez, and G. Martinez | 12/27/2007 | Loan application for Gilbert Martinez containing false and fraudulent income information/ $20,000 |
| 5 | C. Wydler, L. Wydler, J. Martinez, F. Martinez, and G. Martinez | 3/4/2008 | Loan application for "FM Fleet Service" containing false and fraudulent income information/ $75,000 |
| 6 | C. Wydler, L. Wydler, J. Martinez, F. Martinez, and G. Martinez | 3/6/2008 | Loan application for "G&M Wholesale Services" containing false and fraudulent income information/$51,000 |

In violation of Title 18, United States Code, Section 1344 and 2.

## COUNTS SEVEN - ELEVEN
(False Statement to Obtain Credit, 18 U.S.C. §1014 and 2)

1. From in or about April, 2007, and continuing through in or about July, 2008, in the Houston Division of the Southern District of Texas and elsewhere,

**CARLOS WYDLER
LEYLA WYDLER
JESSICA MARTINEZ
GILBERT MARTINEZ
and
FELIX MARTINEZ**

aided and abetted by others known and unknown to the grand jury, made and caused to be made a material false and fraudulent statement for the purpose of influencing the actions of FMB, a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation, in connection with loan applications as more particularly described below:

| Count | Defendant | Date | Description |
|-------|-----------|------|-------------|
| 7 | C. Wydler, L. Wydler, J. Martinez, and F. Martinez | 10/24/2007 | Loan application for Felix Martinez containing false and fraudulent income information/ $25,000 |
| 8 | C. Wydler, L. Wydler, J. Martinez, and G. Martinez | 10/24/2007 | Loan application for Gilbert Martinez containing false and fraudulent income information/ $25,000 |
| 9 | C. Wydler, L. Wydler, J. Martinez, and G. | 12/27/2007 | Loan application for Gilbert Martinez containing false and |

| | Martinez | | fraudulent income information/ $20,000 |
|---|---|---|---|
| 10 | C. Wydler, L. Wydler, J. Martinez, F. Martinez, and G. Martinez | 3/4/2008 | Loan application for "FM Fleet Service" containing false and fraudulent income information/ $75,000 |
| 11 | C. Wydler, L. Wydler, J. Martinez, F. Martinez, and G. Martinez | 3/6/2008 | Loan application for "G&M Wholesale Services" containing false and fraudulent income information/ $51,000 |

In violation of Title 18, United States Code, Section 1014 and 2.

## COUNTS TWELVE - FOURTEEN
(Wire Fraud, 18 U.S.C. §1343 and 2)

**A.    INTRODUCTION**

1.    Paragraphs 1 through 15 of Count One of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

**B.    THE SCHEME TO DEFRAUD**

1.    From in or about April, 2007, and continuing through in or about July, 2008, in the Houston Division of the Southern District of Texas and elsewhere,

**CARLOS WYDLER**
**LEYLA WYDLER**
**JESSICA MARTINEZ**
**GILBERT MARTINEZ**

aided and abetted by others known and unknown to the Grand Jury, did knowingly devise and intend to devise a scheme and artifice to defraud that affected a

financial institution, and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises.

## C.   THE MANNER AND MEANS OF THE SCHEME

3.      Paragraph 16 of Count One of this Superseding Indictment is re-alleged and incorporated by reference herein as a description of the manner and means of the scheme and artifice.

## D.   EXECUTION OF THE SCHEME

4.      On or about the dates specified below, within the Houston Division of the Southern District of Texas and elsewhere, the defendants, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, sign, signals, pictures and sounds, as more particularly described below:

| Count | Defendant | Date | Wire Description |
|-------|-----------|------|------------------|
| 12 | C. Wydler, L. Wydler, J. Martinez, and G. Martinez | 3/18/08 | $32,000 wire from California to Texas |
| 13 | C. Wydler, L. Wydler, J. Martinez, and G. Martinez | 3/18/08 | $35,000 wire from California to Texas |
| 14 | C. Wydler, L. Wydler, J. Martinez, and G. Martinez | 3/28/08 | $57,000 wire from California to Texas |

In violation of Title 18, United States Code, Section 1343 and 2.

## COUNTS FIFTEEN – SEVENTEEN
(Mail Fraud, 18 U.S.C. §1341 and 2)

**A.     INTRODUCTION**

1.     Paragraphs 1 through 15 of Count One of this Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

**B.     THE SCHEME TO DEFRAUD**

2.     From in or about April, 2007, and continuing through in or about July, 2008, in the Houston Division of the Southern District of Texas and elsewhere,

**CARLOS WYDLER**
**and**
**LEYLA WYDLER**

aided and abetted by others known and unknown to the Grand Jury, did knowingly devise and intend to devise a scheme and artifice to defraud and for obtaining money and property from an FDIC-insured institution, in connection with loan applications, by means of material false and fraudulent pretenses, representations, and promises utilizing private and commercial carriers.

## C.   THE MANNER AND MEANS OF THE SCHEME

3.      Paragraph 16 of Count One of this Superseding Indictment is re-alleged and incorporated by reference herein as a description of the manner and means of the scheme and artifice.

## D.   EXECUTION OF THE SCHEME

4.      On or about the dates specified below, within the Houston Division of the Southern District of Texas and elsewhere, the defendants, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, did knowingly send mail matter utilizing private and commercial carriers as more particularly described below:

| Count | Defendant | Date | Description |
|-------|-----------|------|-------------|
| 15 | C. Wydler and L. Wydler | 6/9/08 | Mail matter from California to Texas containing $74,000 cashier's check |
| 16 | C. Wydler and L. Wydler | 6/9/08 | Mail matter from California to Texas containing $54,000 cashier's check |
| 17 | C. Wydler and L. Wydler | 6/10/08 | Mail matter from California to Texas containing $74,000 cashier's check |

In violation of Title 18, United States Code, Section 1341 and 2.

### COUNTS EIGHTEEN – TWENTY-THREE
(Misappropriation, 18 U.S.C. §656 and 2)

1.   Paragraphs 1 through 15 of Count One of this Superseding

Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2.   On or about the dates specified below,

**CARLOS WYDLER**

willfully misapplied the moneys and funds of FMB and the moneys and funds entrusted to the custody and care of FMB, as more particularly described below:

| Count | Date | Description |
|-------|------|-------------|
| 18 | 3/18/08 | $32,000 wire from California to Texas for unsecured car loan |
| 19 | 3/18/08 | $35,000 wire from California to Texas for unsecured car loan |
| 20 | 3/28/08 | $57,000 wire from California to Texas for unsecured car loan |
| 21 | 6/9/08 | $74,000 cashier's check from FMB in California to Wydler family business office in Texas |
| 22 | 6/9/08 | $54,000 cashier's check from FMB in California to Wydler family business office in Texas |
| 23 | 6/10/08 | $74,000 cashier's check from FMB in California to Wydler family business office in Texas |

In violation of Title 18, United States Code, Section 656 and 2.

## NOTICE OF FORFEITURE
18 U.S.C. § 982(a)(2)

Pursuant to Title 18, United States Code, Section 982(a)(2), the United States gives notice to the Defendants

**CARLOS WYDLER (Counts 1-23)**
**LEYLA WYDLER (Counts 1-17)**
**JESSICA MARTINEZ (Counts 1-14)**
**GILBERT MARTINEZ (Counts 1, 3-6, 8-14)**
**and**
**FELIX MARTINEZ (Counts 1-2, 5-7, 10-11)**

that in the event of conviction of any of the offenses charged in Counts 1 through 23 of this Superseding Indictment, the United States intends to seek forfeiture of all property constituting or derived from proceeds obtained, directly or indirectly, as the result of such offenses.

### Money Judgment

The Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, for which the Defendants may be jointly and severally liable.

### Property Subject to Forfeiture

The Defendants are notified that the property subject to forfeiture includes, but is not limited to, real property known as 26778 Burning Tree, New Caney, Texas, together with all improvements, buildings, structures and appurtenances, with a legal description of:

A tract of land containing 1.102 acres (48,000 square feet), being Lots 816, 817, 818 and 819 of Peach Creek Forest, Section 5, an unrecorded subdivision situated in the Christopher Bryan Survey, Abstract No. 75, in Montgomery County, Texas, said 1.102 acre tract (Lots 816, 817, 818 and 819) being that same tract recorded in Montgomery County Clerk's File Number (M.C.C.F. No.) 2007-021395.

### Substitute Assets

The Defendants are notified that in the event that property subject to forfeiture, as a result of any act or omission of a Defendant,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property that cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the Defendants up to the total value of such property pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Sections 982(b).

A TRUE BILL

ORIGINAL SIGNATURE ON FILE

FOREPERSON OF THE GRAND JURY

KENNETH MAGIDSON
United States Attorney


By: _____
Belinda Beek
Assistant United States Attorney
(713) 567-9721